## JOHN THORNE, PROSECUTOR, v. TOWN OF KEARNY, DEFENDANT.

Argued July 12, 1924—Decided November 12, 1924.

1. Irrespective of the general welfare provision of the charter of a town, the "Home Rule act" (*Pamph. L.* 1917, *p.* 358) confers upon municipalities ample power to license and regulate all classes of business.
2. A provision in a municipal ordinance requiring business places licensed to sell food or drink to be consumed on the premises, to afford a free, full and clear view of the whole entire interior from the street, &c., is a reasonable and legal exercise of the police power.
3. The necessity for the passage of an ordinance regulating the licensing of public eating or drinking places, must rest with the municipal body, who are presumed to be conversant with the general conditions in the municipality.

On writ of *certiorari* to review ordinance of the town of Kearny.

Before Justice MINTURN, by consent.

For the prosecutor, *John J. Murphy.*

For the defendant, *Collins & Corbin* and *George D. Hobart,* and *John H. Cooper.*

The opinion of the court was delivered by

MINTURN, J. The prosecutor, who conducts a café for the sale of soft drinks and restaurant purposes in the township of Kearny, was convicted before the recorder of the municipality for violating section 4 of an ordinance providing for the licensing of public places in the town "wherever food or drink or both are sold to be consumed on the premises." The specific violation complained of was his failure to have his windows so constructed as to afford, in the language of the ordinance, "a free, full and clear view of the whole entire

interior from, the street or office or corridor of the building where located."

The legality of the conviction is contested upon the ground that the ordinance in question is *ultra vires.* Upon this contention it is enough to remark that, regardless of the general welfare provisions of the charter of the town, the "Home Rule act" confers upon municipalities ample power to license and regulate all classes of business. *Pamph. L.* 1917, *p.* 358.

The provision in question is a reasonable and legitimate exercise of the police power, which inheres *ex necessitate* as an incident for self-preservation in every municipality upon which devolves by legislative mandate the power of local self-government. *Hopper* v. *Slack,* 69 *N. J. L.* 562, 568; *Jersey City* v. *Foster,* 81 *Id.* 360; *Cooley Const. Lim.* 746; *Levy Co.* v. *Siegel,* 258 *U. S.* 242; *Otis* v. *Parker,* 187 *Id.* 606.

It is contended, however, that the provision in question is an unreasonable exercise of the police power, in that its operation is to unduly expose the prosecutor's legitimate business to the unreserved scrutiny of the curious public, and therefore unreasonably interfere with its legitimate operation. That it may have this effect to some extent may be conceded, and yet it must be observed that such a result is simply an incident of the prime purpose of the regulation. And, as has been properly observed, all regulation involves limitation in some degree. If the principle indicated here be nothing more than an effort to thrown reasonable safeguards in the public interest around the exercise of a legal right, such effort must be sustained, even though, incidentally, the use of the property involved be impaired. Such was the principal involved in the Slaughter House cases in the United States Supreme Court; 16 *Wall.* 36; also, in *Koettegen* v. *Patterson,* 90 *N. J. L.* 698.

That the ordinance excludes from its operation certain classes of stores therein defined not in the category maintained by the presecutor, does not, as is claimed, render the ordinance invalid. We have held otherwise in this court. *Schurmacker* v. *Little Falls,* 92 *N. J. L.* 106; *Sherman* v. *Paterson,* 82 *Id.* 345; *Patsone* v. *Pennsylvania,* 232 *U.*

*S.* 138; *Soon Hing* v. *Crowley,* 113 *Id.* 703; 6 *R. C. L.* 431, and cases.

The fact that the ordinance provides no punishment or penalty, in default of the payment of the fine imposed, does not militate against its validity, since the Home Rule act (*Pamph. L.* 1917, *p.* 347, § 7) confers upon magistrates, in their discretion, the power to commit as an aid in the collection of the fine imposed.

Finally, it is argued that the ordinance is unreasonable as an exercise of the police power. Upon this subject much might be said, but the power of the municipality to require a license for the sale of soft drinks cannot reasonably be gainsaid. *Kimmell* v. *Westen Port (Md.),* 117 *Atl. Rep.* 748; *Kirby* v. *Paragould (Ark.),* 251 *S. W. Rep.* 374; *Plumas* v. *Cosmopolis (Wash.),* 223 *Pac. Rep.* 1052; *Safee* v. *Buffalo,* 198 *N. Y. Supp.* 646.

Legislation of this general character was before the Court of Errors and Appeals in *Meehan* v. *Excise Commissioners,* 75 *N. J. L.* 557, involving the constitutionality of the so-called "Bishop's law" (*Pamph. L.* 1906, *p.* 199), and was held to be a reasonable exercise of the police power, in that such provisions are contrived for the purpose of "rendering police inspection easy and efficacious," and the same result was reached by this court in *Croker* v. *Excise Commissioners,* 73 *N. J. L.* 460. Similar restrictions have been sustained as legal in many of the states where the subject has received consideration.

The necessity for the passage of the ordinance must rest in the discretion of the municipal body who are presumed to be conversant with general conditions making necessary the passage of such regulations, for it has been held to be a matter of common knowledge that, since the passage of the prohibition amendment, there has been inaugurated a widespread movement to circumvent the enforcement of its provisions, especially under the guise of the sale of so-called soft drinks, some of which are often considered injurious to health. 117 *Atl. Rep. (Md.)* 748.

It has also been held to be a matter of common knowledge that, as an aftermath of the war, a large increase in lawlessness has been induced, and that places where intoxicating liquors are illicitly sold are favorite rendezvous for criminals. *Saffee* v. *Buffalo* (*Supreme Court*), 198 *N. Y. Supp.* 646.

Certainly, the municipal council must be credited with knowledge of a public character which the average citizen upon the street is known to possess. For instance, they must know that modern conditions have added to our vocabulary the euphonious substantive "Bootlegger" and "Highjacker" as though to emphasize the existence of an illicit recognized trade, and to clarify and distinguish its elusive followers. Such characters, necessarily, are conspirators against the enforcement of law, and seek, not the open places wherein to carry on their nefarious trade, but only such places where the sun seldom enters and where darkness is a welcome guest.

Considerations of public policy such as these might properly actuate the members of the council in the passage of the ordinance *sub judice,* and would afford a legal basis for its passage. *North Jersey Street Railway Co.* v. *Jersey City,* 75 *N. J. L.* 349.

It results from these views that the ordinance under consideration will be affirmed.